**In re Albert L. PEIA, Debtor.**

**NORWALK SAVINGS SOCIETY, Movant,**

v.

**Albert L. PEIA, Respondent.**

**Bankruptcy No. 95–51862.**

United States Bankruptcy Court, D. Connecticut.

May 1, 1996.

# 311

William A. Schofield, Gregory & Adams, Wilton, CT, for Movant.

Keith N. Costa, Senior Attorney, Office of the United States Trustee, New Haven, CT.

Jeffrey Sapir, Chapter 13 Trustee, White Plains, NY.

Althea Seaborn, Assistant United States Attorney, United States Attorney's Office, Bridgeport, CT.

Albert L. Peia, Danbury, CT, Pro Se.

## MEMORANDUM AND ORDER ON EMERGENCY MOTION TO DETERMINE STATUS OF ORDER GRANTING RELIEF FROM AUTOMATIC STAY NOTWITHSTANDING COMMENCEMENT OF SUBSEQUENT CASE

ALAN H.W. SHIFF, Chief Judge.

Norwalk Savings Society ("NSS") has filed the instant emergency motion for an order determining that a bankruptcy petition filed by Albert L. Peia in the Central District of California and the resulting automatic stay do not nullify this court's order granting

1. The following order entered in the California Case on April 23, 1996:

WHEREAS this Court has been informed of the pendency of another bankruptcy case filed by the debtor herein, currently pending before the bankruptcy court for the District of Con-

NSS relief from the automatic stay. For the reasons that follow, it is determined that the California petition was not a bona fide filing, and the motion is granted.

## BACKGROUND

On December 27, 1995, NSS filed a motion for relief from the automatic stay, so that it could continue a summary process action pending in the Superior Court of the State of Connecticut to evict Peia from premises known as 62 Barnum Road, Danbury, Connecticut. The motion was granted on February 7, 1996. On March 11, 1996, Peia filed a chapter 13 petition in the Central District of California, Case No. LA 96–17446 ER (the "California Case").[1] On March 21, 1996, NSS filed the instant Emergency Motion under 11 U.S.C. § 105(a) for an order "determining that the [California Case] is not a bona fide filing, that any purported automatic stay created by such filing is null and void, and that NSS may continue the eviction action in the Connecticut Superior Court." *Emergency Motion to Determine Validity of Filing and Applicability of Stay, 3.*

## DISCUSSION

### *HISTORICAL PERSPECTIVE*

On February 5, 1996, this court signed a restraining order entered that

... the debtor, Albert L. Peia, shall be restrained from filing any bankruptcy petition, in any Bankruptcy Court of the United States from the date of this Restraining Order until a final decision on Norwalk Savings Society's Motion for Relief From Stay enters by this Court....

That order was prompted by the numerous bankruptcy petitions filed by Peia in this and other courts since 1988 and his threat during the trial that this case would not be his last.

necticut, good cause appearing and absent further order of this Court, it is hereby:
ORDERED: that all proceeding, hearings and all other actions taken by any party or the debtor herein relating to this bankruptcy case, including dismissal of this case, are STAYED, pending further order of this Court.

On February 7, 1996, the following order entered (the "NSS Order"):

1. That the stay [provided] by Section 362 of the United States Bankruptcy Code ... is modified to permit NSS to continue an action in the Connecticut Superior Court to evict the Debtor from its real property at 62 Barnum Road, Danbury, Connecticut;

2. This Chapter 13 case shall remain open so that NSS can continue its eviction action in the Connecticut Superior Court and so that Mr. Peia will not be able to file any additional bankruptcy petitions during the pendency of this case;

3. If Mr. Peia files any bankruptcy petition in violation of this Order, this Court will conduct an expedited hearing to consider whether such was a bona fide filing and to entertain any motion made by NSS or the United States Government for appropriate sanctions against Mr. Peia; and

4. A copy of this order shall be filed in NSS's eviction action pending in the Connecticut Superior Court.

A copy of NSS's motion with exhibits and the NSS Order are attached as Appendix A for ease of reference.

The following enumeration of Peia's exploitation of the bankruptcy process is provided to underscore the conclusion that the California Case was not a bona fide filing, and will not provide a refuge from the stated intent of the NSS Order. Of the thirteen bankruptcy petitions filed by Peia, seven were filed in this district. Five of those cases were dismissed with prejudice, as were several that were filed in other districts. As a result, Peia was not eligible to be a debtor for 180 days from the date of dismissal. *See* § 109(g)(1).[2] A chart of Peia's filings is attached as Appendix B.

On May 13, 1988, Peia filed a chapter 11 petition in the District of New Jersey, Case No. 88–3273. That petition was dismissed on February 27, 1989. On March 22, 1989, Peia filed a chapter 13 petition in this court, Case No. 89–00332. That case was dismissed with prejudice on September 7, 1989, but the day before its dismissal, Peia filed a chapter 7 petition in the Eastern District of Virginia, Case. No. 89–1819–AB, and that case was dismissed on September 27, 1989. On March 8, 1990, Peia filed another chapter 13 petition in the District of New Jersey, Case No. 90–30892, which was dismissed on December 4, 1990 with a prohibition against future filings and a retention of jurisdiction for future sanctions. On November 9, 1990, while that case was pending, Peia filed a second chapter 13 petition in this court, Case No. 90–52243. That case was dismissed with prejudice on January 25, 1991. On December 30, 1991, Peia commenced a third chapter 13 in this court, Case No. 91–53579, which was similarly dismissed with prejudice on March 2, 1992.

On April 14, 1992, in defiance of the March 2, 1992 order dismissing Case No. 91–53579 with prejudice, Peia filed a fourth chapter 13 case in this court, Case No. 92–51235. On October 8, 1992, that case was dismissed with prejudice.[3] *See In re Albert Peia,* 145 B.R. 749 (Bankr.D.Conn.1992). In addition, Peia was ordered to pay the trustee's fees and

2. Code § 109(g)(1) provides:
   Notwithstanding any other provision of this section, no individual ... may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—
   (1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or ... to appear before the court in proper prosecution of the case ...

3. Peia claims that this case was dismissed on June 3, 1992. *See Albert L. Peia v. Executor of the Estate of Carlo Dilena, Alan Shiff, et al.,* United States District Court for the District of Connecticut, 5:92cv00166(AWT) *Application By Way of Certification Setting Aside Any* Purported Action By R.I.C.O. Defendant Shiff dated April 3, 1995, p. 1. The records kept by the clerk of this court, however, confirm that an order entered dismissing this case on October 8, 1992. On January 12, 1993, the United States Attorney for this district filed a motion under F.R.Civ.P. 12(b)(2), (5), and (6) to dismiss this action as to the judicial officers named as defendants stating:

   The amended complaint is a forty seven page rambling diatribe against many who are perceived by the plaintiff to be his enemies, and contains allegations and intimations of racketeering and money laundering controlled by organized crime, and public corruption at several levels of government in New Jersey. *Memorandum in Support of Motion to Dismiss* at 1.

   On February 12, 1993, the motion was granted.

costs under Rule 9011(a) F.R.Bankr.P. Further, "because sanctions 'may take on a more punitive hue to deter further abuses,' *U.S. v. International Brotherhood of Teamsters,* 948 F.2d 1338, 1344 (2d Cir.1991) (citations omitted), a payment to the court [was] ordered in connection with time spent considering the trustee's motion." *In re Peia, supra* at 753. Peia did not heed the prohibition, and he did not pay the monetary sanction. Instead, on December 17, 1992, he filed a fifth chapter 13 petition in this court, Case No. 92–54189. As a consequence, on January 15, 1993, the United States Attorney filed a Sworn Complaint and Application in this court for an Order to Show Cause Why Albert Peia Should Not Be Held in Criminal Contempt. Peia, who claims to be an attorney, but whose license is not currently in force, was represented by counsel. The criminal contempt action was resolved by a Stipulation On Government's Sworn Complaint which Peia and his attorney signed on April 16, 1993, and under which Peia agreed, *inter alia,* that he was prohibited from filing any bankruptcy petition for one year. The Stipulation was "SO ORDERED" on April 16, 1993, and on that date a separate order entered which dismissed Case No. 92–54189 and provided further that "the defendant shall be prohibited from filing, as a debtor or debtor-in-possession, any petition under any chapter of the bankruptcy code in any bankruptcy court in the United States of America for a period of one year from May 1, 1993 to May 1, 1994." *United States v. Albert Peia (In re Peia)* Case No. 92–54189, *Order* April 16, 1993. A copy of the Stipulation and Order are attached as Appendix C.

On October 20, 1993, Peia defied that order by filing a sixth chapter 13 petition in this court, Case No. 93–53415. On March 22, 1994, the United States Attorney filed in the United States District Court for the District of Connecticut a Sworn Complaint and Application for an Order To Show Cause As To Why Albert Peia Should Not Be Held In Criminal Contempt, Civ. No. 3:94MC00099 (AHN). Thereafter, the United States Attorney moved to dismiss that action for the reason that "Albert Peia currently resides in California and thus, prosecution of this action within the District of Connecticut is impractical." The motion was granted on January 30, 1995, and on March 17, 1995 an order entered in this court dismissing the case.

On March 15, 1995, Peia filed a chapter 13 petition in the Central District of California, Case No. LA 95–16777 ER. That case was dismissed on May 19, 1995, and on June 19, 1995, he filed a chapter 7 petition, in the Central District of California, Case No. SB 95–19537. That case was dismissed on September 11, 1995 with a prohibition against any subsequent filings within 180 days. On December 15, 1995, Peia filed the instant case, his seventh chapter 13 petition, and, although it is still pending, on March 11, 1996, he filed a chapter 13 petition, his thirteenth, which commenced the California Case. On April 9, 1996, that case was converted to a case under chapter 7, and it is now stayed. *See note 1, supra* at 2.

### BONA FIDE FILING

■ At the outset, it is noted that this court does not adopt a per se rule against successive or simultaneous filings. *See In re Robinson,* 18 B.R. 891, 893 (Bankr.D.Conn. 1982). Instead, and within the strictures of Rule 1014(b),[4] a determination must be made in each case as to the bona fides of the second filing.

■ When Peia filed the instant chapter 13 petition, he attached Schedule A—Real Property which listed an equitable title interest in the Barnum Road property. On March 11, 1996, Peia filed the chapter 13 petition which commenced the California Case. He attached Schedule A—Real Property on which he listed the same interest in the same property. Thus, two bankruptcy

---

4. Rule 1014(b) provides:

> If petitions commencing cases under the Code are filed in different districts by ... (1) the same debtor ..., on motion filed in the district in which the petition filed first is pending ..., the court may determine, in the interest of justice or for the convenience of the parties, the district or districts in which the case or cases should proceed. Except as otherwise ordered by the court in the district in which the petition filed first is pending, the proceedings on the other petitions shall be stayed by the courts in which they have been filed until the determination is made.

estates have scheduled the same interest in the same property, an oxymoronic result, which supports a conclusion that Peia did not commence the California Case as an honest debtor seeking a fresh start, but rather to frustrate and delay NSS, increase its court costs, and obstruct the NSS Order.[5]

Section 105(a) empowers this court to

> ... issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title ... shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

The last clause "... or to prevent an abuse of process" authorizes this court to determine whether the California Case is a bona fide filing.

The majority of courts which have considered multiple pending cases has concluded that subsequent filings are not bona fide because "a debtor possesses only one estate for the purpose of trusteeship and each bankruptcy must be administered as a single estate under a single Chapter of the Code." *In re Bodine*, 113 B.R. 134, 135 (Bankr. W.D.N.Y.1990) *relying on In re Heywood*, 39 B.R. 910, 911 (Bankr.W.D.N.Y.1984) (citation omitted). The holding in *Heywood* was premised on *Freshman v. Atkins*, 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193 (1925) in which the Supreme Court found that:

> ... the law will not tolerate two suits at the same time for the same cause.... To ignore it, and make a second application, involving a new hearing, was an imposition upon and an abuse of the process of the court ... Not only should the court of bankruptcy protect creditors from an attempt to retry an issue already tried and determined between the same parties, but the court, for its own protection, should arrest, *in limine*, so flagrant an attempt to circumvent its decrees.

*Freshman* at 123–24, 46 S.Ct. at 42.

The *Bodine* court noted that an emerging minority view would permit the filing of a

second petition to address the remaining debts after a discharge has entered in a chapter 7 case. *Bodine* however, "decline[d] to adopt [that] emerging minority view," reasoning that "to permit debtors to maintain their second petition while the first is pending is an easy avenue for abuse of the bankruptcy system. 'It is conceivable that debtors could undertake numerous simultaneous filings when events in one case take a turn to their disliking.'" 113 B.R. at 135 *citing In re Smith*, 85 B.R. 872, 874 (Bankr.W.D.Okl. 1988). It is further noted that some courts have concluded that "serial filings are a 'badge' of bad faith." *In re Spectee Group, Inc.* 185 B.R. 146 at 156 (Bankr.S.D.N.Y. 1995) *quoting In re Eatman*, 182 B.R. 386, 392 (Bankr.S.D.N.Y.1995).

This court has expressed a similar reaction to multiple filings:

> Manipulating the judicial process by reimposing the automatic stay through multiple filings works an unconscionable fraud on creditors. Thus, an abuse of § 362 occurs when the debtor has no intention of effectuating a realistic plan of reorganization and the bankruptcy court's self executing injunction results in unnecessary and costly delays. Abuse of the automatic stay provision [by multiple filings] ... mandates imposing the heavy-handed measures provided under Bankruptcy Rule 9011.

*Putnam Trust Company of Greenwich v. Frenz (In re Frenz)*, 142 B.R. 611, 614 (Bankr.D.Conn.1992) (citation omitted). *See also In re Russo*, 94 B.R. 127, 129 (Bankr. N.D.Ill.1988) (it is a misuse of the bankruptcy process to file one case, then, failing to achieve the intended goals, to refile a second case). That abuse of the bankruptcy process is precisely what has occurred here. Dissatisfied with the NSS Order, Peia simply filed the California Case.

■ Code § 362(a) provides that "a petition filed under § 301 ... operates as a stay, applicable to all parties, of—(1) ... the con-

---

**5.** As indicated *supra* on pages 311–13, this is not the only example of simultaneous petitions filed by Peia.

tinuation ... of a judicial, administrative, or other action or proceeding against the debtor...." As a repetitive debtor in this and other bankruptcy courts, no one knows better than Peia that the automatic stay is intended to provide a measure of relief to debtors from creditors' attempting to recover claims and that any action taken by a creditor in violation of the stay is void. *See In re Ormond Beach Associates Limited Partnership,* 185 B.R. 408, 412 (Bankr.D.Conn.1995) ("Acts violative of the stay are, generally, void and without effect, and if willful, provide a proper basis for contempt sanctions"); *Matter of Colonial Realty Co.,* 134 B.R. 1017, 1024 (Bankr.D.Conn.1991) ("Actions, whether taken knowingly or not, which violate the stay are void and of no effect unless, perhaps, the stay is thereafter annulled by a court"). And as a repetitive debtor employing the tactics described here, it is beyond any reasonable doubt that Peia has exploited the bankruptcy process to subvert the intended purpose of the automatic stay. As the court observed in *In re Gaslight Village Inc.* 8 B.R. 866, 870 (Bankr.D.Conn.1981):

> The automatic stay under Code § 362 was not intended to be used as a weapon or club to reduce secured creditors into submission with the continued passage of time ... The automatic stay was not intended to be a permanent refuge for a financially distressed debtor.

Peia's brand of vexatious litigation is premised upon his self-serving determination that he has an interest in the Barnum Road property, therefore court orders to the contrary may be ignored and nullified by subsequent bankruptcy filings. The evidence at the trial on NSS's motion for relief from the automatic stay, however, demonstrated that Peia lost any interest he had in the Barnum Road property on October 20, 1993. Consequently, further filings by Peia cannot impact upon NSS's right to continue the prosecution of its state court eviction action against Peia.

As noted, Peia repudiated his April 16, 1993 agreement not to file a bankruptcy petition. He then escaped the consequences of a prosecution for criminal contempt, *see United States v. Peia,* Case No. 92–54189, by moving to California, where he filed three more bankruptcy cases. The filing of the California Case was predicted by Peia when he interrupted the reading of the NSS Order with the threat that this would not be his last bankruptcy case. That threat further supports the conclusion that the California Case is not a bona fide filing. To hold otherwise would encourage Peia to continue to misuse the automatic stay as a "weapon or club to reduce [NSS] into submission." *In re Gaslight Village Inc.,* 8 B.R. at 870.

### ORDER

Accordingly, IT IS ORDERED THAT

The California Case is not a bona fide filing; and

IT IS FURTHER ORDERED that the automatic stay resulting from that case does not affect the NSS Order and NSS's corresponding right to continue to prosecute an action pending in the Connecticut Superior Court to evict Peia from its property at 62 Barnum Road, Danbury, Connecticut; and

IT IS FURTHER ORDERED that any further petitions filed by Peia under any chapter of the bankruptcy code in any bankruptcy court in the United States of America shall not affect or interfere with the NSS Order; and

IT IS FURTHER ORDERED that any order converting this case to a case under chapter 7 shall not affect or interfere with the NSS Order; and

IT IS FURTHER ORDERED that his case shall remain open until the further order of this court, notwithstanding any attempt to dismiss under § 1307(b) or any conversion of this case to a chapter 7 case; and

IT IS FURTHER ORDERED that this Order shall be filed with the United States Bankruptcy Court for the Central District Of California at Los Angeles and in NSS's eviction action pending in the Connecticut Superior Court.

APPENDIX A

*UNITED STATES BANKRUPTCY COURT*
*DISTRICT OF CONNECTICUT*

In re Albert L. Peia, Debtor.

Norwalk Savings Society, Movant,

vs.

Albert L. Peia, Debtor, and Jeffrey L. Sapir, Trustee, Respondents.

Chapter 13

Case No. 95–51862 (AHWS)

December 27, 1995

**MOTION FOR RELIEF FROM STAY**

Norwalk Savings Society ("NSS"), by and through its attorneys, Gregory and Adams, P.C., hereby moves for relief pursuant to Sections 362 and 363 of the United States Bankruptcy Code, and as grounds therefore respectfully represents:

1. On December 30, 1991, the Debtor filed a Chapter 13 Petition in this Court.

2. On February 27, 1992, this court entered an order, a copy of which is annexed hereto as exhibit "A", dismissing the Debtor's case with prejudice.

3. In violation of the order of February 27, 1992, the Debtor filed another Chapter 13 proceeding on April 14, 1992.

4. By order dated October 8, 1992, a copy of which is annexed hereto as exhibit "B", this court again dismissed the Debtor's case with prejudice.

5. In the interim, Norwalk Savings Society, on July 16, 1992, obtained a Judgment of Strict Foreclosure in the Danbury Superior Court in an action it had brought to foreclose its first mortgage on the property known as 62 Barnum Road, Danbury, CT, a single family residence (the "Premises"). The Debtor claimed to have an interest in this property by virtue of a contract with the prior owner for the purchase of same, and moved into the property without the consent of the movant.

6. On October 1, 1992, the Debtor recorded what purported to be a lis pendens against the Premises. This instrument did not comply with the requirements of Connecticut's lis pendens statute, section 52–325 of the Connecticut General Statutes, and was not served in accordance with the requirements of that statute.

7. On December 17, 1992, the Debtor again filed a new Chapter 13 case. That case was also dismissed by this court by order dated April 16, 1993, a copy of which is annexed hereto as exhibit "C". The April 16, 1993 order also provided that the Debtor was prohibited from filing for protection under the United States Bankruptcy Code for the period from May 1, 1993 to May 1, 1994.

8. Thereafter, the Movant and the Debtor entered into negotiations for the purchase and sale of the Premises which resulted in the resolution of the parties' dispute with respect to the Debtor's actual interest in the property. The movant and the Debtor reached an agreement whereby the Movant agreed to sell the Premises to the Debtor for the sum of $185,000.00.

9. When the Debtor was unable to close on April 26, 1993, NSS agreed to reduce the selling price to $170,000.00 and scheduled the closing for June 14, 1993.

10. The Debtor again failed to close on the purchase of the Premises. A final contract was then executed by the parties which provided for a further reduction in the sales price to $168,000.00 and further setting a new closing date of October 20, 1993 at 11:00 a.m. The contract provided that time was of the essence as to the date and time of the closing. A copy of said contract is annexed hereto as exhibit "D".

11. The Debtor did not pay a deposit or any monies to the Movant in connection with the proposed sale of the Premises or the Debtor's use and occupancy of the Premises. The Movant has never agreed to lease or rent the property to the Debtor.

12. The Debtor failed to close on October 20, 1993 at 11:00 a.m. as required by the contract. Instead, the Debtor filed another Chapter 13 proceeding on October 20, 1993 at 4:56 p.m., after the contract with NSS expired by its own terms. That proceeding

was dismissed by this court on March 17, 1995.

13. On March 15, 1995, the Debtor filed a chapter 13 proceeding in the Central District of California. That case was dismissed by order dated May 11, 1995, a copy of which is annexed hereto as Exhibit "E".

14. On June 19, 1995, the Debtor filed a chapter 7 proceeding in the Central District of California. That case was transferred from Los Angeles to San Bernardino, and was ultimately dismissed by order dated September 11, 1995, a copy of which is annexed hereto as Exhibit "F".

15. In all of the Debtor's filings after the July, 1993 contract with NSS, the Debtor has either scheduled the contract with the Movant as an executory contract or the property as an asset of the estate, or both. However, as previously stated, the contract between the Debtor and NSS expired prior to the October 20, 1993 petition. Accordingly, there is no contract for the Debtor to assume in this proceeding and cause exists to lift the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code.

16. On November 29, 1995, a summary process eviction proceeding was commenced against the Debtor by the Movant in the Connecticut Superior Court. That action has been stayed by this proceeding.

17. The Debtor remains in possession of the premises without the consent of the movant.

18. The Debtor has no interest in said real property. Accordingly, the property can not be necessary for an effective reorganization.

19. NSS does not have, and has not been offered adequate protection for the Debtors' continued occupancy of the premises.

20. If NSS is not permitted relief from the automatic stay to secure and protect its real property and continue the eviction proceeding against the Debtor, it will suffer irreparable injury, loss and damage.

WHEREFORE, NSS requests relief from the stay imposed by Section 362d of the Bankruptcy Code so that it may continue the action in the Connecticut Superior Court to evict the Debtor from its real property as described above and take such other steps as are necessary to secure and winterize its property and that it have such other and further relief as is just and proper.

Dated this 27th day of December, 1995.

NORWALK SAVINGS SOCIETY
By Its Attorneys
GREGORY AND ADAMS, P.C.

By: Robert M. Fleischer
    Robert M. Fleischer (CT11960)
    190 Old Ridgefield Road
    Wilton, CT 06897
    (203) 762–9000

### EXHIBIT A

UNITED STATES
BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

In the Matter of Albert Louis
Peia, Debtor(s).

In Proceedings under Chapter 13

Case No. 91–53579
**AMENDED

*ORDER DISMISSING CHAPTER 13 CASE*

_____ The debtor has filed a motion in accordance with 11 U.S.C. Section 307(b) seeking to dismiss this case, and it appears that the case has not been converted previously under 11 U.S.C. Section 706 of Section 1112.

_____ A party in interest other than the debtor has filed a motion in accordance with 11 U.S.C. Section 1307(c) seeking to dismiss the case. The court finds, after notice and a hearing, that the motion should be granted.

/**WITH PREJUDICE
  x   The case is dismissed for failure of the debtor to prosecute.

IT IS ORDERED THAT:

1. This Chapter 13 case is dismissed, with prejudice.

2. [Other provisions as needed]

**318**

Feb. 27, 1992 ___Alan H.W. Shiff___
Date            Alan H.W. Shiff, U.S. Bank-
                ruptcy Judge

EXHIBIT B

UNITED STATES
BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

In re Albert Peia, Debtor

Chapter 13

Case No. 92–51235

APPEARANCES:

Albert Peia
3 Lakeview Terrace
Sandy Hook, CT 06482, Pro Se

Jeffrey L. Sapir, Esq.
399 Knollwood Road
White Plains, NY 10603, Chapter 13 Trustee

MEMORANDUM AND ORDER ON
TRUSTEE'S MOTION TO DISMISS
CASE AND FOR SANCTIONS UN-
DER RULE 9011(a) FED.R.BANKR.P.

ALAN H.W. SHIFF, Bankruptcy Judge

Albert Peia is no stranger to the bankrupt-
cy process. This is his seventh case in five
years. Prior to the instant case, his most
recent was dismissed with prejudice on
March 2, 1992.[1] As a result, he was not
eligible to be a debtor for 180 days from that
date. *See* 11 U.S.C. § 109(g)(1). In spite of
that prohibition, Peia commenced this chap-
ter 13 case on April 14, 1992, which prompted
the trustee to file the instant motion to dis-
miss with prejudice and for sanctions under
Rule 9011(a) Fed.R.Bankr.P.

BACKGROUND

On June 16, 1987, American Home Fund-
ing of Richmond, Virginia, ("American"),
commenced a foreclosure action in New Jer-
sey state court against Peia's property, locat-
ed at 99 Northrop Drive, Bricktown, New
Jersey. On May 13, 1988, Peia commenced a

chapter 11 case in the district of New Jersey,
which was dismissed on March 3, 1989, allow-
ing American to continue its foreclosure pro-
ceeding. On March 22, 1989, Peia com-
menced a chapter 13 case in this court, which
was dismissed with prejudice on September
7, 1989. Meanwhile, on September 6, 1989,
he commenced a chapter 7 case in the east-
ern district of Virginia, which was dismissed
on September 27, 1989. On December 12,
1989, the New Jersey state court entered a
final judgment of foreclosure in favor of
American. On March 8, 1990, Peia com-
menced a chapter 13 case in the district of
New Jersey, which was dismissed on April
12, 1991. On November 9, 1990, Peia com-
menced another chapter 13 case in this court.
That case was dismissed with prejudice on
January 22, 1991. On December 30, 1991,
Peia commenced a third chapter 13 case in
this court (the "1991 case"). As noted, that
case was dismissed with prejudice on March
2, 1992. On April 14, 1992, Peia commenced
the instant chapter 13 case (the "1992 case").

On May 29, 1992, Peia filed papers in
response to the trustee's motion which pur-
port to seek my disqualification and also: (1)
oppose the trustee's motion for dismissal and
sanctions; (2) seek an order vacating the
dismissal of the 1991 case; (3) request au-
thority to dispose of property; and (4) re-
quest authority to maintain a lawsuit in the
district court.

DISCUSSION

I. RECUSAL

The basis for Peia's request that I disquali-
fy myself from presiding over this case is my
alleged bias, as shown by what Peia charac-
terizes as a "blatant disregard for or pur-
poseful inattention to time and notice re-
quirements in accordance with court rules."
*Peia's "Certification"*, May 25, 1992, ¶ 5. In
addition, Peia's March 22, 1992 complaint,
filed in the district court for this district,
alleges that in the 1991 case I "arbitrarily,
[and] collusively, denied … motions [for util-
ity deposits, rental or sale of properties, and
return of assets] causing the wasting of said

---

1. The case was dismissed on February 21, 1992.
   On March 2, 1992 an amended order entered

dismissing the case with prejudice.

assets; the loss of rents, [and] the loss of assets through negligence and/or theft." *Peia's Complaint,* 5 92 CV 166, March 22, 1992, Count Eight, ¶ 3.

Title 28 U.S.C. § 455, made applicable by Rule 5004(a) Fed.R.Bankr.P., provides that "[a]ny judge ... shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The test under this section is whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality could be questioned reasonably. *See In re Drexel Burnham Lambert Inc.,* 861 F.2d 1307, 1313 (2nd Cir.1988), *rehearing denied,* 869 F.2d 116, (2nd Cir.1989), *cert. denied, Milken v. S.E.C.,* 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1012 (1989); *In re Martin–Trigona,* 573 F.Supp. 1237, 1243 (D.Conn.1983), *appeal dismissed,* 770 F.2d 157 (2d Cir.1985), *cert. denied,* 475 U.S. 1058, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986).

The documents submitted by Peia do not set forth facts which substantiate my alleged bias. Thus, at the hearing, I asked Peia to state the basis for his claim. Peia responded with a lengthy and circuitous diatribe against judicial systems in general and the judicial system of New Jersey in particular. I therefore conclude that Peia's claim that I am biased against him is unsubstantiated and, more to the point, false. Accordingly, I will not disqualify myself from presiding over this case.

## II.   MOTION TO VACATE [2]

Peia has moved to vacate the dismissal of the 1991 case which was dismissed with prejudice for failure to prosecute because he failed to file a plan. *See* 11 U.S.C. § 1307(c)(3); *see also* Rule 3015(b) Fed. R.Bankr.P. It appears that one basis for Peia's motion is his claim that the 1991 case was improperly dismissed because he had

**2.** Peia's "motion to vacate" is treated as a motion to reopen a case under Rule 60(b)(6) Fed. R.Civ.P., made applicable by Rule 9024 Fed. R.Bankr.P.

**3.** *See* note 1, *supra.*

filed an adversary proceeding. Peia's adversary proceeding, however, was filed on February 25, 1992, four days *after* the order of this court dismissing that case.[3]

At the hearing on the trustee's motion to dismiss, Peia also alleged that the 1991 case was improperly dismissed because he was not given sufficient notice of the February 13, 1992 hearing scheduled for that purpose. According to Peia, he was entitled to, but did not get, 20 or 25 days notice.[4] Notice of that hearing was sent to him by the clerk's office on January 3, 1992. Thus, Peia actually received more notice than he claims he was entitled to get. Accordingly, I conclude that the 1991 case was properly dismissed for failure to prosecute.

## III.   MOTION TO DISMISS

Bankruptcy Code § 109(g)(1) provides that:

Notwithstanding any other provision of this section, no individual ... may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—

(1) the case was dismissed by the court for failure ... to appear before the court in proper prosecution of the case ...

The trustee's motion to dismiss the 1992 case is grounded on Peia's ineligibility to be a debtor. Section 109(g) has been characterized as "clear and unambiguous" in prohibiting an individual from being a debtor prior to the expiration of 180 days from the dismissal of the individual's previous case for want of prosecution. *Matter of Smith,* 851 F.2d 747, 748 (5th Cir.1988); *In re Ellis,* 48 B.R. 178, 180 (Bankr.E.D.N.Y.1985). Thus, having concluded that the 1991 case was properly dismissed, I accordingly conclude that the trustee's motion to dismiss this case should be granted.

**4.** Perhaps he was confused by Rules 2002(a)(5) and 2002(b) Fed.R.Bankr.P. which require 20 and 25 days notice, respectively. Neither of these rules is applicable. Rule 2002(a)(5) does not apply to chapter 13 cases and Rule 2002(b) applies only to hearings for the confirmation of plans.

## IV.  SANCTIONS

Rule 9011(a)  Fed.R.Bankr.P. provides in relevant part:

> The signature of ... a party constitutes a certificate that the ... party has read the document; that to the best of the ... party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, or to cause unnecessary delay, or needless increase in the cost of litigation or administration of the case.... If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it ... an appropriate sanction, which may include an order to pay to the other party ... the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

This rule is substantively the same as Rule 11 Fed.R.Civ.P., thus decisions which clarify the latter are useful guides.  *See In re Frenz*, 142 B.R. 611, 613 n. 1 (Bankr.D.Conn. 1992), *citing Cinema Serv. Corp. v. Edbee Corp.*, 774 F.2d 584, 585 (3rd Cir.1985).  It is well settled that the purpose of Rule 11 is:

> to deter baseless filings ... and thus ... streamline the administration and procedure of the federal courts....  Although the rule must be read in light of concerns that it will spawn satellite litigation and chill vigorous advocacy any interpretation must give effect to the Rule's central goal of deterrence.

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990) (citations omitted).  By its terms, the rule applies to all parties, represented or not.  *Business Guides v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 546–48, 111 S.Ct. 922, 931, 112 L.Ed.2d 1140 (1991).  While a party's *pro se* appearance is a factor to be considered, *Posner v. Minnesota Mining and Manufacturing Co., Inc.*, 713 F.Supp. 562, 565 (E.D.N.Y.1989), it obvious that one acting *pro se* has "no impenetrable shield ... [and] has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir.1986); *see also Patterson v. Aiken*, 841 F.2d 386, 387 (11th Cir.1988); *In re Frenz, supra*, 142 B.R. at 613.  It is well settled that filing a chapter 13 petition to save one's home is an acceptable use of the bankruptcy process so long as the petition is filed in good faith, *In re Frenz, supra*, 142 B.R. at 614.  It follows then that repeated filings aimed solely at frustrating foreclosure through invocation of the automatic stay constitutes bad faith and an abuse of the bankruptcy process sanctionable under Rule 9011(a).  *Id.*

Peia's repeated filing of bankruptcy petitions without taking appropriate steps toward confirmation of a plan constitutes a pattern of filing for "an improper purpose, such as to harass, or to cause unnecessary delay" in violation of Rule 9011(a).

> [W]hen a debtor repeatedly synchronizes the commencement of his or her bankruptcy case with the expiration of the redemption period set by a state court foreclosure judgment and makes no effort to prosecute his or her bankruptcy case ... bankruptcy protection is not properly sought.

*Id.* at 614;  *see also Weiszhaar Farms, Inc. v. Livestock State Bank*, 113 B.R. 1017, 1020 (D.S.D.1990) (citations omitted).  Accordingly, I conclude that Peia should be sanctioned under Rule 9011(a).

The sanction the trustee seeks is the payment of a fee and the costs he incurred in connection with the instant motion.  In a chapter 13 case commenced, as here, by an ineligible debtor, the services of a trustee seeking dismissal may be compensated by the imposition of Rule 9011(a) sanctions.  *In re Bono*, 70 B.R. 339, 345–46 (Bankr. E.D.N.Y.1987).  The amount awarded as a sanction for the trustee's services is calculated by multiplying the amount of time reasonably expended in response to the sanctioned conduct by a reasonable hourly rate.  *C.f. In re Frenz, supra*, 142 B.R. at 615, *citing In re Wonder Corp. of America*, 109 B.R. 18, 32 (Bankr.D.Conn.1989).

The trustee's statement lists 7.4 hours researching Peia's filing history and the applicable law, preparing the motion, and attending the hearing. The 7.4 hours includes 4.9 hours at $175.00 per hour and 2.5 hours at $150.00 per hour. Those hours and rates are reasonable; they compute to $1,232.50, which is allowed in full. In addition, because sanctions "may take on a more punitive hue to deter further abuses", *U.S. v. International Brotherhood of Teamsters*, 948 F.2d 1338, 1344 (2d Cir.1991) (citations omitted), a payment to the court may be ordered in connection with the time spent considering the trustee's motion. *Cf. In re Frenz, supra*, 142 B.R. at 615; *c.f. In re U.S. Truck Co., Inc.*, 71 B.R. 99, 103–104 (Bankr.E.D.Mich.1987). Accordingly, I conclude that a $1,000.00 payment to this court is a reasonable and justified sanction.

## V. PEIA'S REMAINING MOTIONS

In view of the foregoing, Peia's motions for authority to dispose of property and to maintain a lawsuit in the district court will not be considered.

### ORDER

For the foregoing reasons, this case is dismissed with prejudice; Peia is directed to pay the trustee $1,232.50; he is directed to pay the clerk of this court $1,000.00; such payments are to be made in the form of certified checks within 60 days of the date of this order; and IT IS SO ORDERED.

IT IS FURTHER ORDERED that a copy of this Memorandum of Decision and Order shall be filed in the Ocean County Superior Court of the State of New Jersey, the Bankruptcy Court for the District of New Jersey at Trenton, and the Bankruptcy Court for the Eastern District of Virginia at Alexandria.

Dated at Bridgeport this 8th day of October, 1992.

EXHIBIT C

## UNITED STATES BANKRUPTCY COURT DISTRICT OF CONNECTICUT

In Re: Albert Peia, Debtor,

United States of America, Plaintiff,

v.

Albert Peia, Defendant.

Case No. 92–54189

Chapter 13

### ORDER

The United States of America and the defendant, Albert Peia, having presented a Stipulation on Government's Sworn Complaint and Application for an Order to Show Cause Why Albert Peia Should Not Be Held in Criminal Contempt, it is hereby

ORDERED that pursuant to the terms and conditions of that Stipulation, the defendant's pending Chapter 13 proceeding entitled *In re Albert Peia*, Bnk. Case. No. 92–54189 shall be dismissed.

IT IS FURTHER ORDERED that pursuant to the terms and conditions of that Stipulation, the defendant shall be prohibited from filing, as a debtor or debtor-in-possession, any petition under any chapter of the bankruptcy code in any bankruptcy court in the United States of America for a period of one year from May 1, 1993 to May 1, 1994.

So ORDERED on this 16 day of April, 1993 at Bridgeport, Connecticut.

I certify that this is a true and correct copy of the original which is on file at the Office of the Clerk.
/s/ [Signature]
Deputy Clerk, U.S. Bankruptcy Court
12/16/93
Date

April 19, 1993

cc: all creditors

& int. parties (18)

EXHIBIT D

**AGREEMENT** made this _30ᵗʰ_ day of ___July___, 1993 by and between,

NORWALK SAVINGS SOCIETY, the "SELLER", having an office at 48 Wall Street, Norwalk,

Connecticut, and **ALBERT L. PEIA**, the "PURCHASER", residing at 62 Barnum Road, Danbury,

Connecticut.

*Witnesseth:*

1. **DESCRIPTION OF PROPERTY, PRICE AND CONDITIONS.** The Seller hereby agrees to sell and convey and the Purchaser hereby agrees to purchase the real property (the "premises") described in **Schedule A**, title to said premises being subject to the exceptions set forth in **Schedule B**, for the price set forth in **Schedule C** and subject to such other terms and conditions as may be set forth in **Schedule D**, all of which Schedules are annexed hereto and made a part hereof. The premises is more commonly known as 62 Barnum Road, Danbury, Connecticut.

2. **DEED, DELIVERY OF DEED.** The deed of conveyance shall be a full covenant warranty deed, to be delivered at the closing of title together with check of Seller's attorney in payment of the Connecticut and Municipal Conveyance Taxes. The delivery and acceptance of the executed deed of conveyance shall constitute full compliance by the Seller with all of the terms, covenants, conditions and representations contained herein.

3. **DURATION OF OFFER.** The offer to sell on the terms set forth in this Agreement is conditioned on the Purchaser signing this Agreement and signing and returning to Seller the original documents called for in Schedule D on or before August 2, 1993. If this Agreement is not signed by said date, this offer to sell shall terminate unless it has been sooner terminated by written notice from the Seller, which right of termination is hereby reserved by the Seller.

4. **CLOSING AND AFFIDAVITS.** The closing of title shall take place at the offices of Gregory and Adams, P.C., 190 Old Ridgefield Road, Wilton, Connecticut, on October 20, 1993, at 11:00 a.m. or at such place and date as may be agreed upon by the parties hereto, at which time the deed shall be delivered upon receipt of the full purchase price. THE PARTIES AGREE THAT TIME IS OF THE ESSENCE AND THAT THE CLOSING OF TITLE SHALL NOT BE POSTPONED FOR ANY REASON, EXCEPT AS PROVIDED IN PARAGRAPH 7 HEREIN. If Purchaser's lender so requires, the closing of title shall take place at Purchaser's lending institution, provided same is within Fairfield County. Seller shall execute, if prepared and submitted by the Purchaser prior to the time of the closing of title, an affidavit (a) verifying the non-existence of mechanics' liens, tenants' rights, security interests in personal property or fixtures being sold with the premises and the current accuracy of any existing survey of the premises; (b) verifying that Seller is not a "foreign person" as defined in Section 1445 of the Internal Revenue Code and stating the Seller's taxpayer identification number; and (c) furnishing the necessary information to complete Form 1099S as required by the Tax Reform Act of 1986.

5.    **ADJUSTMENTS TO PURCHASE PRICE.** The Purchaser shall assume and pay all taxes and public improvement assessments in respect to the premises which become due and payable on or after April 26, 1993. Said taxes shall be apportioned in accordance with local custom as of the date of the closing of title. Rents, sewer assessments, condominium charges, fees and charges of private associations, water rents, municipal liens and other assessments and charges affecting the premises, including interest on any mortgages to be assumed by the Purchaser as part of the payment of the purchase price, shall also be apportioned as of the date of closing of title. Should any tax, assessment or rate be undetermined on the date of the closing of title, the last determined tax, assessment or rate shall be used for the purpose of the apportionment. The Purchaser shall pay the Seller at the closing for the value of any fuel oil or bottled gas on the premises at the time of closing.

6.    **INSURANCE AND RISK OF LOSS.**    Throughout the period between the date of this Agreement and the closing of title, Seller shall keep the buildings on the premises insured against loss by fire and other casualty customarily insured against, to the extent presently insured. Should the principal building on the premises be destroyed or so damaged by fire or other casualty as to require substantial rebuilding, the Purchaser may, by written notice to the Seller within ten days after notice of said destruction or damage, elect to rescind this Agreement. If this Agreement shall be so rescinded, Seller shall repay to Purchaser all sums paid to Seller by Purchaser on account of the purchase price without interest and shall reimburse Purchaser to the extent of the reasonable expense actually incurred by Purchaser for the examination of the title to the premises (not to exceed $250.00) whereupon all rights and liabilities of the parties hereunder shall be at an end. If this Agreement shall not be so rescinded, Purchaser shall accept title to the premises without reduction of the purchase price and shall be entitled to receive all insurance proceeds recovered or to be recovered with respect to the premises on account of such damage or destruction, less such amount as Seller shall have paid or become obligated to pay for protection and repair thereof.

7.    **TITLE.** The Seller shall give and the Purchaser shall accept, subject to the exceptions to title set forth in Schedule B, good and marketable title to the premises, free and clear of all encumbrances. No matter shall be construed as an encumbrance or defect in title so long as such matter is not construed as an encumbrance or defect in title under the Connecticut Standards of Title. The Purchaser shall notify the Seller's attorney in writing of any exceptions to title which do not appear on Schedule B and which constitute an encumbrance or defect as described above, at least 10 days prior to the closing of title. Any encumbrance or defect not so noticed to Seller's attorney shall be deemed · accepted. If upon the date of closing of title the Seller shall be unable to convey to the Purchaser title as required above, then the Seller shall have a reasonable time thereafter, but not to exceed thirty (30) days, within which to perfect title. If, at the end of said period, the Seller remains unable to convey such title, the Purchaser may elect to accept such title as the Seller can convey, upon the payment of the aforesaid purchase price, or may reject the deed conveying such title. Upon such rejection all sums paid by Purchaser to Seller on account hereof together with any reasonable expenses actually incurred by the Purchaser for the examination of the title to the premises (not to exceed $250.00), shall be repaid to the Purchaser without interest thereon, whereupon all rights and liabilities of the parties hereunder shall be at an end.

8. **DAMAGES.** If the Purchaser fails to perform his obligations under this Agreement *through no fault of Seller, the Seller* may pursue in a court of competent jurisdiction any remedies available to it. If the Seller fails to perform its obligations under this Agreement, through no fault of Purchaser, Purchaser's sole remedy will be a claim for damages adjudicated in a court of competent jurisdiction.

9. **ASSIGNMENT.** The Purchaser may not assign this Agreement or any right, title or interest therein.

10. **CONDITION OF PREMISES - REPRESENTATIONS.** The Purchaser acknowledges that he has examined the premises, that he is fully satisfied with the physical condition thereof and agrees to accept the premises in their present condition on an "as is" basis. Neither the Seller nor any representative of the Seller has made any representation or promise upon which the Purchaser has relied concerning the condition of the premises, except as herein expressly set forth.

11. **BROKERS.** The parties hereto recognize that no broker negotiated the sale of the premises. The Seller enters into this Agreement in reliance on the representation of the Purchaser, hereby made, that no broker or agent brought the premises to the Purchaser's attention or was in any way a procuring cause of this sale and purchase. In the event any broker shall make a claim against the Seller based upon dealing with the Purchaser, the Purchaser shall indemnify the Seller from and hold him harmless against any and all damages or attorney's fees the Seller may pay as a result of such claim. The indemnity contained in this Paragraph 13 shall survive the closing of title.

12. **ENTIRE AGREEMENT.** This Agreement (including the schedule or schedules referred to in the body of this Agreement and attached hereto) constitutes the entire agreement between the parties and they hereby acknowledge that no express or implied representations, warranties, conditions or understandings have been made between them except as set forth herein.

13. **LANGUAGE.** Wherever used, the singular number shall include the plural, the plural the singular, and the use of any gender shall be applicable to all genders.

14. **BINDING AGREEMENT.** This Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, successors and assigns of the respective parties.

*Seller's attorney at*

15. **FORM 1099 FILING.** The ~~Purchaser~~ consents to be designated the "real estate broker" for purpose of determining the person responsible for filing the required 1099 Form with the IRS.

16. **NOTICES.** All notices, elections or other communications to be given hereunder shall be deemed to have been validly given only if in writing or either (a) mailed, postage prepaid, by registered or certified mail, return receipt requested, to the address of the receiving party as set forth on the first page hereof or to such other address as may be designated in a notice given in the manner set forth herein, or (b) delivered to the attorneys for the receiving party. A copy of all mailed notices shall be similarly and simultaneously sent to the attorneys for the parties addressed as follows: if for

Seller, to Steven G. Berg, Esq., Gregory and Adams, P.C., 190 Old Ridgefield Road, P.O. Box 190, Wilton, Connecticut 06897; if for Purchasers, to 62 Barnum Road, Danbury, Connecticut. Notices may be given by the attorneys for the party giving such notice. All such notices shall be deemed given and received on the next business day after the date of such mailing or delivery. The parties shall retain all proofs of mailing furnished by the Postal Service.

17. **RECORDING.** Purchaser shall not record this contract or any document purporting to provide notice of this contract. It shall be considered an event of default if Purchaser shall record this contract or any notice thereof, and Seller shall thereupon pursue its remedies under Paragraph 8 hereof.

18. **PURCHASER'S RIGHT TO COUNSEL.** Purchaser acknowledges that he has had the opportunity to consult with counsel of his own choice, and that neither the Seller nor its attorneys, Gregory and Adams, P.C., have undertaken to advise him in any way regarding this transaction.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date and year first above written.

SELLER:

NORWALK SAVINGS SOCIETY

By: _Carl F. Howell_

Its _Executive Vice President + C.O.O._
T.I.N. 06-0475300

PURCHASER:

_Albert L. Peia_
Social Security No:

---

## SCHEDULE A

### PROPERTY DESCRIPTION (THE "PREMISES")

**FIRST PARCEL**

ALL THAT CERTAIN piece or parcel of land, together with the buildings and improvements thereon, on Barnum Road, in the City of Danbury, County of Fairfield and State of Connecticut, and shown and designated as "Parcel 2" on that certain map entitled "Map Showing Proposed Division of Property of Estate of Ellen E. Boyd, Danbury, Connecticut, Scale: 1″ = 40′, Area 1.803 AC., Zone RA–40, Aug. 16, 1979," prepared by Surveying Associates, P.C. which map is on file in the office of the Danbury Town Clerk as Map No. 6733.

**SECOND PARCEL**

ALL THAT CERTAIN piece or parcel of land situated in the City of Danbury, County of Fairfield and State of Connecticut, and shown and designated as Parcel 1 on a certain map entitled "Sketch Showing Proposed Division of Property of Estate of Ellen E. Boyd, Danbury, Connecticut, Scale: 1″ = 40′, Area 1.803 Ac., Zone: RA–40, Jan. 16, 1979", prepared by Surveying Associates, P.C., and which map is filed in the office of the Town Clerk of Danbury as Map No. 6733.

## SCHEDULE B

### PERMITTED ENCUMBRANCES

The premises are subject to such liens and encumbrances as are set forth below:

1. Any restrictions or limitations imposed or to be imposed by governmental authority, including, but not limited to, laws and regulations pertaining to environment, toxic hazards, zoning and planning and inland wetlands and watercourses, of the City of Danbury, State of Connecticut and United States of America and any agency thereof.

2. Taxes of the City of Danbury which become due and payable after the date of the delivery of the deed, and which taxes the Purchaser assumes and agrees to pay as part of the consideration for the deed.

3. Sewer maintenance charges, water rents, fire district taxes, special assessments, public improvement assessments and any unpaid installments thereof, which assessments or installments become due and payable after the date of the delivery of the deed, and which assessments or installments the Purchaser will assume and pay as part of the consideration for the deed.

4. Any state of facts an accurate survey would show provided the same does not render title unmarketable.

5. Drainage from Barnum Road as shown on said Map No. 6733 on file in the Danbury Town Clerk's Office.

6. The effect, if any, of the filing of any bankruptcy petition by Albert L. Peia.

## SCHEDULE C
### *PURCHASE PRICE*

The purchase price is **ONE HUNDRED SIXTY–EIGHT THOUSAND ($168,000.00) and no/100 DOLLARS** which the Purchaser shall pay as follows:

| | |
|---|---:|
| Upon the delivery of the deed of conveyance, in cash, or by certified personal check of Purchaser or bank check payable to the order of the Seller without endorsement other than by Purchaser or Purchaser's attorney, drawn on a bank which is a member of the New York Clearing House or the proceeds of which are immediately available to Seller at a local bank, or by wire transfer to a bank and account designated by Seller, the sum of | $168,000.00 |
| **TOTAL** | **$168,000.00** |

## SCHEDULE D

### *ADDITIONAL TERMS AND CONDITIONS*

1. Purchaser agrees that in the event he fails to close on the purchase of the premises by October 20, 1993, for any reason whatsoever, Purchaser shall quit the premises immediately and shall have no further claim to said property.

2. The parties agree that all previous contracts are superseded and rendered null and void by this contract. The Purchaser acknowledges receipt of good and valuable consideration as further consideration for this agreement between the parties.

3. This contract is conditioned upon Purchaser signing and returning to Seller on or before August 2, 1993, the following original documents:

A. A Release of that certain Document recorded in Volume 1025 at Page 860 of the Danbury Land Records, receipt of which is acknowledged.

B. A Stipulation for Judgment of Possession which Seller shall be entitled to use in connection with any summary process action which Seller may commence if Purchaser fails to close on

the purchase of the premises by October 20, 1993.

C. A full general release from Purchaser in favor of Seller, its agents, attorneys, appraisers, servants, and employees from and against any and all claims which may arise from or touch upon the Seller's foreclosure of this property and this transaction.

D. Evidence, satisfactory to the Seller, that the Purchaser's tenant shall vacate the premises immediately in the event Purchaser fails to close on the purchase of the premises by October 20, 1993.

EXHIBIT E

## UNITED STATES BANKRUPTCY COURT
## Central District of California

I hereby attest and certify on _Nov. 28, 1995_ that the attached reproduction(s), containing ___1___ pages, is a full, true and correct copy of the complete document entitled:

_Order Dismissing Chapter 13 Petition_

**which** ☐ **Includes:** ☐ Exhibits ☐ Attachments

n file in ___ fice and in my legal custody, at the marked location:

☑ 3__ Los Angeles St.
    L__ geles, CA 90012

☐ 22__ arrillo St.
    Sa__ arbara, CA 93101

☐ 34 Civic Center Plaza
    Santa Ana, CA 92701

☐ 699 N. Arrowhead Ave.
    San Bernardino, CA 92401

Jon D. Ceretto, CLERK OF COURT

By: _____
                Deputy Clerk

THIS CERTIFICATION IS VALID ONLY WITH THE UNITED STATES BANKRUPTCY COURT SEAL

Rev. 8/95

Edwina E. Dowell
Chapter 13 Standing Trustee
333 South Grand Ave., Ste. 2910
Los Angeles, California 90071
Telephone: (213) 628–2552

UNITED STATES
BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA

In re: Albert Louis Peia, Debtor(s)

Chapter 13

Case No. LX95–16777–ER

ORDER DISMISSING CHAPTER 13 PE-
TITION DUE TO FAILURE OF
DEBTOR(S) TO MAKE PRE–CON-
FIRMATION PAYMENTS AT 341(a)
MEETING

ERNEST M. ROBLES, Bankruptcy
Judge.

Notice of the 341(a) meeting of creditors
and initial confirmation hearing date having
been duly served by the Clerk of the Court,
or the Trustee, upon the debtor(s), and the
debtor(s) having failed to appear, and good
cause appearing, it is therefore,

ORDERED:

1. That all stay and restraining orders
arising under 11 U.S.C. 362(a) and 1301 are
vacated and dissolved; and

2. That the petition herein is dismissed
and all pending motions and adversary pro-
ceedings in this case are moot and dismissed.

Dated: May 11, 1995.

EXHIBIT F

# UNITED STATES BANKRUPTCY COURT
## Central District of California

I hereby attest and certify on ___12/15/95___ that the attached reproduction(s), containing ___04___ pages, is a full, true and correct copy of the complete document entitled:

___Order Dismissing Chapter 7 Case___

which ☐ Includes: ☐ Exhibits ☐ Attachments

file in my office and in my legal custody, at the marked location:

☐ 300 N. Los Angeles St.
Los Angeles, CA 90012

☐ 34 Civic Center Plaza
Santa Ana, CA 92701

222 E. Carrillo St.
Santa Barbara, CA 93101

☑ 699 N. Arrowhead Ave.
San Bernardino, CA 92401

Jon D. Ceretto, Clerk of Court

By: _____
Deputy Clerk

...ATION IS VALID ONLY WITH THE UNITED STATES BANKRUPTCY COURT SEAL

**MARCY J.K. TIFFANY**
UNITED STATES TRUSTEE
**GARY W. DYER**
ASSISTANT UNITED STATES TRUSTEE
**TIMOTHY J. FARRIS**
SENIOR ATTORNEY ADVISOR

U.S. Department of Justice
OFFICE OF THE UNITED STATES TRUSTEE
699 North Arrowhead Avenue
Suite 106
San Bernardino, CA 92401
Telephone: (909) 383–5850

UNITED STATES
BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
SAN BERNARDINO DIVISION

In re: Albert L. Peia, Debtor(s).

Case No. SB 95–19537 DN

Chapter 7

ORDER DISMISSING CHAPTER
7 CASE

DATE: September 7, 1995

TIME: 9:00 AM

COURTROOM: 201

DAVID N. NAUGLE, Bankruptcy Judge.

Based upon the United States Trustee's Notice of Motion and Motion To Dismiss Case Under 11 U.S.C. § 707(b), the notice to creditors given by the clerk requiring opposition to be filed within 11 days of the scheduled hearing, the notice given to the debtor by the court at the hearing held August 17, 1995 and the statements of the debtor at that hearing, the written opposition of the debtor to the motion to dismiss, the appearance of Gary W. Dyer for the United States Trustee and Albert L. Peia for himself, after arguments of the parties, and for good cause shown.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT notice of the hearing was appropriate under the circumstances, particularly where no opposition but the debtor's was filed; and

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the motion to dismiss with 180 day prohibition against filing is granted, and the case is dismissed.

Date: SEP 11 1995

*UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT*

In re: Albert L. Peia, Debtor.

Norwalk Savings Society, Movant

v.

Albert L. Peia, Jeffrey L. Sapir, Trustee, Respondents.

Chapter 13

Case No. 95–51862

Doc. I.D. # 2

February 7, 1996
*ORDER GRANTING RELIEF
FROM STAY*

On the 16th day of January, 1996, there came on for hearing pursuant to Section 362(d)(1) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") the Motion for Relief From Stay (the "Motion") filed on December 28, 1995 by the Movant, Norwalk Savings Society ("NSS"). After reviewing the Motion and considering the evidence presented, the Court hereby makes the following findings of fact and conclusions of law:

*I. FINDINGS OF FACT*

A. Appropriate notice and opportunity for hearing have been given for the entry of this Order Granting Relief From Stay in accordance with the provisions of §§ 102 and 362 of the Bankruptcy Code and Rule 4001 of the Bankruptcy Rules.

B. In July, 1992 NSS obtained a judgment of strict foreclosure in the Connecticut Superior Court for the Judicial District of Danbury. On January 14, 1993, NSS took title by foreclosure pursuant to a Corrected Certificate Of Foreclosure, Movant's Exhibit C.

C. Thereafter, NSS and Mr. Peia entered into negotiations for the sale of the property at 62 Barnum Road, Danbury, Connecticut ("the Property"). These negotiations resulted in a contract for the sale of the Property with a purchase price of $185,000 and an

April 1993 closing date. The Debtor failed to close on said date. Thereafter, NSS reduced the selling price and scheduled a new closing date for June 1993. The Debtor again failed to close.

D. On or about July 30, 1993, NSS and the Debtor entered into a new contract (the "Contract") for the purchase of the Property, Movant's Exhibit D. The Contract provided that time was of the essence as to the date and time of the closing, set for October 20, 1993 at 11:00 A.M. The evidence reflects that the Movant's intention was to sell the Property as quickly as possible and that the Movant had no flexibility with respect to the date and time of the closing, which was not changed. Accordingly, NSS did not waive the time of the essence requirement of the contract.

E. The Debtor failed to close on October 20, 1993 at 11:00 a.m. as required by the Contract. Instead, the Debtor filed a Chapter 13 proceeding on October 20, 1993.

F. In response to the Motion, on or about January 4, 1996, the Debtor filed opposition papers to the Movant's motion.

G. NSS had given Mr. Peia permission to occupy the Property until the closing date of October 20, 1993. Pursuant to Movant's Exhibit D, Mr. Peia agreed that if he failed to close on the property by October 20, 1993, he would vacate the Property immediately and would have no further claim to the Property.

H. On November 9, 1995, the Movant duly served a Notice to Quit Possession of the Premises on the Debtor and thereafter, the Movant commenced a Summary Process Eviction action in the Connecticut Superior Court.

I. The Debtor remains in possession of the premises without the consent of the movant.

WHEREUPON, the Court makes the following conclusions:

## II. CONCLUSIONS OF LAW

A. Pursuant to § 362(g) of the Bankruptcy Code, the burden of proof is a shifting one. An initial showing of cause must be made by the Movant. The Debtor has the burden of proof on all issues concerning relief from stay other than the Debtor's equity in property.

B. The Debtor has the ultimate burden of production and persuasion to show that the Contract with NSS was not terminated prepetition under Connecticut state law.

C. NSS did not waive the time of the essence requirement of the Contract.

D. The Debtor's breach of the Contract with NSS was material and went to the essence of the Contract itself.

E. The only rights the Debtor had with respect to the Property existed pursuant to Movant's Exhibit D. Pursuant to its own terms, the Contract with NSS expired prepetition on October 20, 1993 at 11:00 A.M., thereby terminating forever any claim or interest that the Debtor or his estate may have to the Property.

F. NSS has sustained its burden of proof pursuant to § 362(g). Mr. Peia has not offered any testimony or submitted any exhibits and did not sustain his burden of proof on the cross examination of Movant's witness.

G. There is no controlling reason to keep the automatic stay in effect with regard to a contract which has expired, especially where the Debtor occupies the Premises without any legal or equitable right to do so. The Court finds that adequate cause exists under § 362(d)(1) to warrant a lifting of the automatic stay with respect to NSS.

BASED UPON THE FOREGOING, it is therefore ORDERED as follows:

1. That the stay afforded by Section 362 of the United States Bankruptcy Code, be, and it hereby is, modified to permit NSS to continue an action in the Connecticut Superior Court to evict the Debtor from its real property at 62 Barnum Road, Danbury, Connecticut;

2. This Chapter 13 case shall remain open so that NSS can continue its eviction action in the Connecticut Superior Court and so that Mr. Peia will not be able to file any additional bankruptcy petitions during the pendency of this case;

3. If Mr. Peia files any bankruptcy petition in violation of this Order, this Court will conduct an expedited hearing to consider whether such was a bona fide filing and to entertain any motion made by NSS or the United States Government for appropriate sanctions against Mr. Peia; and

4. A copy of this order shall be filed in NSS's eviction action pending in the Connecticut Superior Court.

Dated this 7th day of February, 1996.

## APPENDIX B

| CHAPTER/CASE [1] | FILED | DISPOSITION |
|---|---|---|
| 1. ch. 11 D.NJ 88–3273 | 5/13/88 | Dismissed 2/27/89. Appeal dismissed 3/31/89. |
| 2. ch. 13 89–00332 | 3/22/89 | Dismissed with prejudice 9/7/89. |
| 3. ch. 7 E.D.VA 89–1819–AB | 9/6/89 | Dismissed 9/27/89. |
| 4. ch. 13 D.NJ 90–30892 | 3/8/90 | Dismissed 12/4/90 with prohibition against future filings and retained jurisdiction for further sanctions. |
| 5. ch. 13 90–52243 | 11/9/90 | Dismissed with prejudice 1/25/91. |
| 6. ch. 13 91–53579 | 12/30/91 | Dismissed with prejudice 3/2/92. |
| 7. ch. 13 92–51235 | 4/14/92 | Dismissed with prejudice 10/8/92. |
| 8. ch. 13 92–54189 | 12/17/92 | Criminal contempt action filed 1/15/93. Dismissed with prejudice, see Stipulation and order entered 4/16/93 prohibiting Peia from filing any bankruptcy petition under any chapter of the bankruptcy code in any bankruptcy court in the USA for one year from May 1, 1993 to May 1, 1994. |
| 9. ch. 13 93–53415 | 10/20/93 | Criminal contempt action filed 3/22/94. Motion by U.S. Attorney to dismiss granted 1/30/95. Dismissed 3/17/95. |
| 10. ch. 13 C.D.CA LA 95–16777–ER | 3/15/95 | Dismissed 5/19/95. |
| 11. ch. 7 C.D.CA SB 95–19537 | 6/19/95 | Dismissed 9/11/95 with prohibition against filing for 180 days. |
| 12. ch. 13 95–51862 | 12/15/95 | **INSTANT CASE** |
| 13. ch. 13 C.D.CA LA 96–17446–ER | 3/11/96 | Pending—the California Case. Debtor converted case to Chapter 7 on 4/9/96. Order staying this Case due to the pendency of the INSTANT CASE entered 4/23/96 in the C.D.CA. |

[1] Unless otherwise stated, all cases were filed in the United States Bankruptcy Court for the District of Connecticut at Bridgeport.

APPENDIX C

UNITED STATES
BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

In Re: Albert Peia, Debtor,

United States of America, Plaintiff,

v.

Albert Peia, Defendant.

Case No. 92–54189

Chapter 13

April 15, 1993

*STIPULATION ON GOVERNMENT'S SWORN COMPLAINT AND APPLICATION TO HOLD ALBERT PEIA IN CRIMINAL CONTEMPT*

ALAN H.W. SHIFF, Bankruptcy Judge.

This stipulation sets forth and confirms the agreement between Albert Peia (the "defendant") and the United States Attorney's Office for the District of Connecticut (the "Government") concerning the above-captioned contempt proceeding.

*The Agreement:*

The Government's application for criminal contempt was made by Sworn Complaint pursuant to the provisions of Rule 9020(b) of the Federal Rules of Bankruptcy Procedure; Section 109(g) of the Bankruptcy Code; Rule 42(b) of the Federal Rules of Criminal Procedure and Title 18 U.S.C. Section 401.

The Government and the defendant agree to the following terms and conditions as resolution to the Sworn Complaint and Application to Hold Albert Peia in Criminal Contempt:

1. The defendant shall voluntarily dismiss his pending Chapter 13 petition entitled *In re: Albert Peia*, Bnk. Case No. 92–54189 (which encompasses any and all adversary proceedings which have been filed under that petition). A proposed Order is attached for the Court's consideration;

2. The defendant shall be prohibited from filing, as a debtor or a debtor-in-possession, any petition under any chapter of the bankruptcy code in any bankruptcy court in the United States of America for a period of one year from May 1, 1993 to May 1, 1994;

3. Pursuant to the Bankruptcy Court's Memorandum of Decision and Order of October 8, 1992, the defendant shall pay to the United States Bankruptcy Court the amount of $1,000.00 and to Jeffrey Sapir, Chapter 13 Trustee, the amount of $1,232.50. *In Re Albert Peia,* 145 B.R. 749 (Bankr.D.Conn. 1992). The sanctions shall be paid pursuant to the attached payment schedule.

4. The defendant understands that in the event that he fails to adhere to any of the terms or conditions of this stipulation, or any prior Orders of the Bankruptcy Court, the Government shall void this agreement and immediately prosecute the defendant for any and all violations of Title 18, United States Code before the United States District Court for the District of Connecticut or in any other District Court which has jurisdiction over the person of defendant. In addition, the defendant understands that in any subsequent criminal action before the United States District Court, the only factual issue presented before the Court is whether the defendant's conduct violated the terms of this agreement.

5. This stipulation is subject to the approval of the United States Bankruptcy Court for the District of Connecticut.

Respectfully submitted,

ALBERT S. DABROWSKI
UNITED STATES ATTORNEY

/s/ Deirdre A. Martini
DEIRDRE A. MARTINI
Asst. U.S. Attorney
915 Lafayette Blvd. Rm. 309
Bridgeport, CT 06604
(203) 579–5596
Fed.Bar No. 02250

/s/ Albert Peia
Albert Peia
Defendant

/s/ Robert Sullivan
Robert Sullivan, Esq.
Counsel for the Defendant
190 Main Street
Westport, CT 06880
Federal Bar No. 08969

SO ORDERED on this 16 day of April, 1993 at Bridgeport, Connecticut.

UNITED STATES
BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

In Re: Albert Peia, Debtor,

United States of America, Plaintiff,

v.

Albert Peia, Defendant.

Case No. 92–54189

Chapter 13

*ORDER*

The United States of America and the defendant, Albert Peia, having presented a Stipulation on Government's Sworn Complaint and Application for an Order to Show Cause Why Albert Peia Should Not Be Held in Criminal Contempt, it is hereby

ORDERED that pursuant to the terms and conditions of that Stipulation, the defendant's pending Chapter 13 proceeding entitled *In re Albert Peia,* Bnk. Case No. 92–54189 shall be dismissed.

IT IS FURTHER ORDERED that pursuant to the terms and conditions of that Stipulation, the defendant shall be prohibited from filing, as a debtor or debtor-in-possession, any petition under any chapter of the bankruptcy code in any bankruptcy court in the United States of America for a period of one year from May 1, 1993 to May 1, 1994.

So ORDERED on this 16 day of April, 1993 at Bridgeport, Connecticut.